UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

----------------------------------------------------------------------X

JANE DOE,

                                                                    Civil Case No:

                              Plaintiff,

        -against-

                                                                    **COMPLAINT**


TRISHUL CONSULTANCY LLC,                          Plaintiff Demands A
MARRIOTT INTERNATIONAL, INC., and                    Trial By Jury
MARK ADAMS

                              Defendants.
----------------------------------------------------------------------X

        Plaintiff, JANE DOE, (hereinafter referred to as "Plaintiff" and/or "DOE"), by and

through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendant

TRISHUL CONSULTANCY LLC (hereinafter referred to as "TRISHUL CONSULTANCY"),

Defendant MARRIOTT INTERNATIONAL, INC. (hereinafter referred to as "MARRIOTT"),

and Defendant MARK ADAMS (hereinafter referred to as "ADAMS"), (hereinafter collectively

referred to as "Defendants"), upon information and belief, as follows:


### NATURE OF CASE

1.  Plaintiff brings this action, charging that the Defendants violated Plaintiff's rights

    pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to

    2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-

    166) ("Title VII"), and to remedy violations of the New Jersey Law Against

    Discrimination ("NJLAD"), based upon the supplemental jurisdiction of this Court

    pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28

                                         1

U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination, hostile work environment, retaliation and constructive discharge by Defendants.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 28 U.S.C. §1331, and pendent jurisdiction thereto.

3. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4. Plaintiff has satisfied all of the administrative prerequisites prior to filing this action.

5. Venue is proper in this District based upon the fact that the events or omissions that gave rise to the claims asserted herein occurred within the District of New Jersey.

## PARTIES

6. Plaintiff is an individual female who is a citizen of the State of New Jersey in the County of Mercer.

7. At all times material, Defendant TRISHUL CONSULTANCY, was and is a limited liability company duly existing by the virtue and laws of the State of New Jersey that does business in the State of New Jersey.

8. Defendant TRISHUL CONSULTANCY operates as a staffing agency.

9. At all times material, Defendant MARRIOTT, was and is a foreign business corporation duly existing by the virtue and laws of the State of Delaware that does business in the State of New Jersey.

10. At all times material, Defendant TRISHUL CONSULTANCY and Defendant MARRIOTT were and are joint employers. Defendant TRISHUL CONSULANCY provides staffing to Defendant MARRIOTT.

11. At all times material, Defendant ADAMS was and is the Executive Housekeeper at Defendant MARRIOTT.

12. At all times material, Defendant ADAMS had supervisory authority over Plaintiff with regards to her employment, controlling many tangible aspects of Plaintiff's job duties, including holding the power to hire and fire Plaintiff.

## STATEMENT OF MATERIAL FACTS

13. In or around June of 2015, Defendant TRISHUL hired Plaintiff to work as a housekeeper at Defendant MARRIOTT's Ewing, New Jersey location.

14. Plaintiff's job duties primarily consisted of cleaning hotel rooms.

15. At all times material, Plaintiff performed her job duties well with no negative reviews or complaints.

16. In or around June of 2016, Defendant ADAMS hugged another MARRIOTT employee, looked directly at Plaintiff and asked her, "**are you jealous?**" Plaintiff responded, "**No, I'm not jealous. Why would I be?**"

17. Thereafter, Defendant ADAMS began to repeatedly sexually harass Plaintiff.

18. In or around June of 2016, Defendant ADAMS asked Plaintiff, "**pull up your shirt, let me see [your breasts]**." Defendant ADAMS recognized that Plaintiff was uncomfortable by his question and attempted to persuade her by stating, "**don't worry, I will give you extra hours**." Plaintiff pleaded with Defendant ADAMS, "**no, I don't want to do that. I just want to get my job done.**"

19. Defendant ADAMS engaged in this quid pro quo sexual harassment towards Plaintiff on one (1) other occasion in or around June of 2016 where he asked to see Plaintiff's breasts in exchange for providing her with extra hours. Plaintiff again denied Defendant ADAMS's unwanted sexual advances.

20. Plaintiff was in constant fear of Defendant ADAMS and began to avoid him.

21. In or around June of 2016, Defendant ADAMS asked Plaintiff, "**do you have a boyfriend**?" Plaintiff told Defendant ADAMS that she was married and not interested in him romantically.

22. However, Defendant ADAMS did not listen to Plaintiff and continued to sexually harass her.

23. In or around June of 2016, Defendant ADAMS began referring to Plaintiff as his girlfriend. Defendant ADAMS regularly told Plaintiff and other employees that Plaintiff was his girlfriend.

24. From in or around June of 2016 through in or around August of 2016, Defendant ADAMS called Plaintiff his girlfriend on a daily basis.

25. In or around June of 2016, Defendant ADAMS began to constantly follow Plaintiff inside hotel rooms while she was cleaning. Defendant ADAMS would then berate Plaintiff and intentionally interfere with her work. Defendant ADAMS unnecessarily required Plaintiff to clean rooms that were already cleaned often times demanding for Plaintiff to "**get down on your knees to wash the tub.**"

26. From in or around June of 2016 through in or around November of 2016, Defendant ADAMS engaged in this behavior multiple times per day.

27. Defendant ADAMS retaliated against Plaintiff by interfering with her work and making

her do additional, unnecessary work because she rejected his repeated sexual advances.

28. In or around September of 2016, Plaintiff attempted to inform Defendant MARRIOTT's General Manager ABBY (last name unknown) about Defendant ADAMS's unlawful conduct. When Plaintiff asked ABBY to meet to discuss the situation, ABBY told Plaintiff to "**wait**" and that she would talk to her later. However, ABBY did not meaningfully address the situation and left Plaintiff to endure Defendant ADAMS's ongoing sexual harassment.

29. Meanwhile, Defendant ADAMS's sexually deviant behavior escalated.

30. In or around October of 2016, Defendant ADAMS followed Plaintiff into one of the rooms she was cleaning. Defendant ADAMS then asked Plaintiff who she lived with and what her address was so that he could have a "**threesome**" with her. Defendant ADAMS told Plaintiff, "**My birthday is coming up. I want some pussy. Do you know anybody? I want a threesome. Have you ever done that?**" Plaintiff simply responded, "**no.**"

31. Defendant ADAMS then suddenly lifted Plaintiff's shirt exposing her breasts and fondling them. Defendant ADAMS forcefully pulled Plaintiff towards him reaching into her pants to squeeze her bare buttocks. Next, Defendant ADAMS showed Plaintiff a picture of his genitalia on his phone and pulled down his pants exposing his penis to Plaintiff. Defendant ADAMS began to masturbate in front of Plaintiff telling her, "**ain't it pretty**." Defendant ADAMS then demanded that Plaintiff "**get down**," and forcefully pushed her head to his penis telling her to "**lick it a little for me.**"

32. Plaintiff was in extreme fear as she was trapped alone with Defendant ADAMS cornering her in the hotel room. Defendant ADAMS then forced Plaintiff to give him oral sex by physically overpowering her and opening her mouth to insert his penis. Defendant

ADAMS gripped Plaintiff's head and kept it in place while he violently thrusted his penis into Plaintiff's mouth repeatedly for approximately fifteen (15) minutes causing her to choke and have difficulty breathing. Defendant ADAMS then pulled his penis out of Plaintiff's mouth to ejaculate on her pants. Afterwards, Defendant ADAMS told Plaintiff that "**I will be back. I want to have sex with you**." Defendant ADAMS then pulled a condom from his pocket and lifted it up towards Plaintiff.

33. Once Defendant ADAMS left, Plaintiff knew that this was her only chance to escape and to run away. Defendant ADAMS saw Plaintiff and chased after her. Plaintiff quickly entered the laundromat section of the hotel to hide from Defendant ADAMS until he eventually left for the day.

34. The following day, Defendant ADAMS threatened Plaintiff that if she told anyone about the sexual incident, no one would believe her and that she would be "**done**."

35. Defendant's threat put Plaintiff in fear for her life and her job. Thus, she remained silent to protect herself.

36. Plaintiff began to leave the door open while she was cleaning rooms because she was afraid Defendant ADAMS would sexually assault her again.

37. Defendant ADAMS further retaliated against Plaintiff because she would not submit to his sexual advances. Between October of 2016 and November of 2016, Defendant ADAMS intentionally reduced Plaintiff's hours because she would not have sex with him. As a result, Plaintiff's finances were negatively affected and she had trouble supporting herself.

38. In or around November of 2016, Defendant ADAMS bragged to Plaintiff and other MARRIOTT employees that he pushed his wife down the stairs.

39. Defendant ADAMS was relentless in his sexual pursuit of Plaintiff.

6

40. In or around November of 2016, Defendant ADAMS followed Plaintiff into one of the hotel rooms that she was cleaning and aggressively pulled Plaintiff's body towards his. Defendant ADAMS proceeded to fondle Plaintiff's buttocks and forcibly kiss her.

41. Shortly thereafter, Defendant ADAMS again threatened Plaintiff that if she reported his conduct or said "**no**" to his advances, she would lose her job.

42. Plaintiff was struggling with severe anxiety and emotional distress each day going into work fearing that Defendant ADAMS would attack and/or fire her.

43. Defendant ADAMS often came to work with the smell of alcohol on his breath.

44. In or around November of 2016, Plaintiff had an emotional breakdown and forced General Manager ABBY to listen to her regarding Defendant ADAMS's unlawful conduct. Plaintiff broke down hysterically crying to General Manager ABBY when detailing Defendant ADAMS's multiple sexual assaults and frequent sexually charged comments. ABBY responded by questioning Plaintiff, "**why didn't you tell me this before?**" Plaintiff told Abby that "**I was trying to talk to you but you kept saying wait wait wait and when I came into your office you left.**" Manager ABBY did not provide Plaintiff with a meaningful response and Plaintiff was left not knowing how Defendant MARRIOTT was going to address the situation.

45. Thereafter, around three (3) days after notifying Defendant MARRIOTT about Defendant ADAMS's unlawful conduct, Plaintiff informed Defendant TRISHUL CONSULTANCY's Manager CJ (last name unknown) about the situation hoping that Defendant TRISHUL CONSULTANCY would take action to remedy the matter.

46. Shortly after Plaintiff complained, Defendants MARRIOTT and TRISHUL CONSULTANCY retaliated against Plaintiff for reporting Defendant ADAMS's sexual

harassment and sexual assaults by drastically reducing her hours.

47. In or around December of 2016, Defendants constructively discharged Plaintiff by limiting her hours to a point where Plaintiff could not earn a living.

48. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected the Plaintiff to on a frequent and ongoing basis throughout Plaintiff's employment.

49. Plaintiff claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

50. Plaintiff claims that Defendants discriminated against and constructive discharged Plaintiff because of her sex/gender and because she complained and opposed the unlawful conduct of Defendants related to the above protected classes.

51. Plaintiff claims unlawful constructive discharge and seeks reinstatement.

52. Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claims that Defendants owed and breached its duty to Plaintiff to prevent the harassment/discrimination/retaliation and is liable therefore for negligence.

53. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

54. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

55. Plaintiff has documents to further support the claims made herein.

56. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (NOT AGAINST INDIVIDUAL DEFENDANTS)

57. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

58.  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:

> "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;...."

59. Defendants MARRIOTT and TRISHUL CONSULTANCY engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of her sex/gender, causing a hostile work environment based on the same.

60. Plaintiff hereby makes a claim against Defendants MARRIOTT and TRISHUL CONSULTANCY under all of the applicable paragraphs of Title VII.

61. Defendants MARRIOTT and TRISHUL CONSULTANCY violated the above and

9

Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
## (NOT AGAINST INDIVIDUAL DEFENDANTS)

62. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

63. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) [Section 704] provides that it shall be an unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

64. Defendants MARRIOTT and TRISHUL CONSULTANCY engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq., by retaliating against Plaintiff with respect to the terms, conditions or privileges of her employment because of her opposition to the unlawful employment practices of Defendants.

65. Defendants MARRIOTT and TRISHUL CONSULTANCY violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## DISCRIMINATION
## (AGAINST ALL DEFENDANTS)

66. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

10

67.  New Jersey's Law Against Discrimination ("NJLAD") Section 10:5-12(a) sets forth in pertinent part as follows:

68.  "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) For any employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69.  Defendants engaged in unlawful discriminatory practices prohibited by NJLAD Section 10:5 et seq., by discriminating against the Plaintiff because of her sex/gender causing a hostile work environment based on the same.

70.  Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the NJLAD Section 10.

71.  Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FOURTH CAUSE OF ACTION**
**UNDER NEW JERSEY STATE LAW**
**RETALIATION**
**(AGAINST ALL DEFENDANTS)**

72.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

73. New Jersey Law Against Discrimination §10:5-12(d) provides that it shall be an unlawful discriminatory practice:

74. "For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted by this act."

75. Defendants engaged in unlawful discriminatory and retaliatory practices prohibited by NJLAD Section 10:5 et seq., by retaliating and otherwise discriminating against Plaintiff, including, but not limited to, terminating Plaintiff's employment, because of Plaintiff's opposition to Defendants' unlawful employment practices.

76. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## AIDING AND ABETTING
## (AGAINST ALL DEFENDANTS)

77. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. New Jersey Law Against Discrimination §10:5-12(e) provides that it shall be an unlawful discriminatory practice: "For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

12

79. Defendants engaged in an unlawful discriminatory practice prohibited by NJLAD Section 10:5 et seq., by aiding, abetting, inciting, compelling and/or coercing the discriminatory, unlawful, and retaliatory conduct as stated herein.

80. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendant in an amount to be determined at trial for all emotional distress, lost wages, back and front pay, punitive damages, liquidated and statutory damages, attorneys fees, costs and interest and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated:    New York, New York
          November 27, 2018

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*


 /s/ Johnmack Cohen
Johnmack Cohen, Esq.
One Penn Plaza, Suite 4905
New York, NY 10004
(212) 587-0760

13